# Long & Furst *versus* McLanahan & Stone.

1. A., for a nominal rent, leased from B. an old furnace property with water-power thereon for a term of ten years, covenanting to repair, improve and rebuild the furnace so that it should be fit for manufacturing iron. In no case was A. to remove his improvements, but if he elected to surrender the lease at the end of three years, he was to have an equal interest with the lessor in the improvements:

*Held*, That the lease amounted to a building contract, and that the property was bound for all improvements made under the terms of that contract, if they came within the mechanic's lien laws.

2. The lessee substituted steam for water power, and having for this purpose constructed a boiler-house and an engine-house, it was held that the contract did not authorize such erection, so as to render the lessor's property subject to mechanic's lien therefor.

3. The premises were not liable to a mechanic's lien for alterations and repairs. even though made with the consent of the lessor, the Act of May 1st 1861 (P. L. 550), not being in force in Clinton county, where the premises were situated.

4. The fixing of the "stack" so that in outward appearance it remained the same, and patching of the broken stone walls of the casting-house with boards, and putting on a new roof, amounted to repairs only, not entitling the person doing the work or furnishing the materials to a mechanic's lien therefor.

5. Even had the lease authorized the erection of the engine-house and boiler-house, so as to justify the filing of a lien for them under the Acts of June 16th 1836 (P. L. 696) and April 21st 1856 (P. L. 496), the claim in this case would have been bad, as it was filed against the whole premises and not against the new erections specifically.

April 27th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

[Long *v.* McLanahan.]

ERROR to the Court of Common Pleas of *Clinton county :* Of January Term 1883, No. 220.

Scire facias sur mechanics' lien, by McLanahan and Stone against Joseph B. Furst and Joseph H. Long, owners, and Austin Curtin, contractor, to recover $1,924.22 for materials furnished and work and labor done, upon an alleged contract with Curtin, for and about the erection and construction of buildings on a property known as the Mill Hall Furnace. Curtin made no defence, and the issue was solely with Long and Furst. Pleas, nil debet ; and specially that Curtin was simply a lessee, and had no authority to make contracts that would entitle the parties thereto to file liens against the Mill Hall Furnace, or any other building on the premises.

On the trial, before MAYER, P.J., the plaintiffs, to support their claim, offered in evidence articles of agreement, dated March 24th 1880, between Furst and Long, as lessors, of the one part, and Curtin, lessee, of the other, which, after reciting the lease to Curtin of nine acres of land upon which stood the Mill Hall Furnace and the water-power connected therewith, continued as follows:

" The said Curtin does hereby agree to repair, improve and rebuild said Furnace building, and to put the same in proper condition for manufacturing iron, and to operate the same in the manufacture of iron. The said Curtin to commence said work of repairing by the first day of April next, and to have the same completed and the furnace in operation by the first day of July, A. D. 1880.

" The term of this lease shall continue ten (10) years from the date hereof at the annual rent of one dollar per year. The said Curtin to pay all taxes assessed against said property during the term of this lease.

" It is further understood that the said Austin Curtin shall not remove any improvements he may make in rebuilding and operating said furnace, and at the expiration of this lease all the improvements shall belong to the said Long & Furst.

" It is understood, however, that should the said Curtin only occupy said property three years from the date hereof, and at that time surrender up possession of the same to the said Long & Furst, in that case the said improvements made by the said Curtin shall belong to and be owned by the said Long & Furst and the said Curtin equally. It is further understood that the said Curtin shall have the privilege of buying the land lying on the south-east side of the furnace race, including said race, the line to run on the top of the race bank on the north-west side, containing about six acres for the sum of five thousand dollars ($5,000). The said Curtin shall have the refusal of said piece of land at said price for the term of one year from

[Long v. McLanahan.]

the date hereof. The above refusal shall also include the water-power." . . . . .

The evidence showed that under this instrument Curtin took possession of the premises and began improvements. The furnace had not been operated for twenty years, and the buildings remaining were, the furnace, a stone building called the "stack," and a casting-house which was a one-story stone structure. A part of the walls of the casting-house had fallen in, and the roof was worthless. A bridge from the bank to the stack which had been used for carrying stock to the furnace had also rotted away. Curtin tore down the gable of one of the buildings and parts of the walls, closing the openings thus made with boards. He built a new bridge and a new roof to the casting-house; and instead of repairing the forebay, water-wheel and other machinery by which the furnace had formerly been operated, he put in machinery necessary to run the furnace by steam, for which purpose he built new engine and boiler-houses, using, in part, for the construction thereof, materials obtained from tearing down an old stable which was on the premises.

The plaintiff's claim as filed, was against the entire premises.

The defendants asked the court to charge, inter alia, as follows:

(1.) "That under the contract of the 24th day of March 1880, between said Long & Furst, lessors, and Austin Curtin, lessee, there is no authority given, such as will warrant in law the filing of a mechanics' lien, to bind the estate of said Long & Furst in said premises, and therefore their verdict should be for defendants." Refused.

(2.) That under said contract there is no authority given by said Long & Furst to said Curtin to make a contract with plaintiffs for machinery, such as they furnished, which would make said Long & Furst liable to plaintiffs, either upon a contract or by virtue of a mechanics' lien." Refused.

(4.) "That the contract of 24th March 1880, with Curtin is in law and fact a lease and not a building contract, such as would subject the Mill Hall Iron Works to a mechanics' lien for machinery placed therein by said Curtin." Refused.

(7.) "That no lien can be filed against the general building of the Mill Hall Iron Works, for machinery, such as engine, boiler, &c., which were placed in buildings separate and apart from the main building. That in this respect the lien filed is fatally defective." Refused.

The court charged the jury, inter alia, as follows: "We say to you under our view of the law, that this is a building contract, and Austin Curtin could bind that property for

[Long *v.* McLanahan.]

whatever improvements he built or put upon it, if these improvements and buildings came within the mechanics' lien law. . . . It seems to us very clear and plain that Curtin was to be compensated for putting these improvements and repairs, and whatever he rebuilt on these premises, by the use and occupancy of the property, because the rent charged is only a nominal rent ; and we say to you, in view of the fact that only a nominal rent was charged, that the real estate of the lessors is therefore bound for the expense incurred in making these repairs, improvements and whatever·building was done upon it by Austin Curtin. . . . That there was such a substantial addition made to that property by the erection of that engine house and the boiler house and what was done to the casting house, and the bridge house, as would, in our view of the law, constitute a new erection, such as would subject the property to a mechanics' lien. We therefore say to you, as we have been requested to determine this question as a matter of law, that this property is subject to the mechanics' lien law, and is bound by the lien of McLanahan & Stone, the plaintiffs in this case, and that they are entitled to recover the amount of their claim if, from all the evidence, the jury are satisfied, that it was furnished upon the credit of the buildings."

Verdict and judgment for the plaintiffs for the amount claimed. Whereupon the defendants took this writ, assigning for error the refusal of their points, and that part of the general charge of the court above set forth.

*A. O. Furst* and *O. G. Furst* (with whom was *J. R. Youngman*), for plaintiffs in error.—The agreement of March 24th 1880, was simply a lease and not a building contract, such as to subject the estate of the lessors to a mechanics' lien for "anything that Curtin did there in the way of repairs and improvements." The special Act of May 1st 1861, permiting liens to be filed for "repairs, alterations and additions," has never been extended to Clinton county. Buildings and fixtures erected by a lessee for years for the purposes·of trade, are not the subject of mechanics' liens : Church *v.* Griffith, 9 Barr 117; White's Appeal, 10 Barr 252; Haworth *v.* Wallace, 2 Harris 118. The mere fact that the lessors charged only a nominal rent for the premises, cannot be held, under the agreement, to be a reason why their estate should be charged with this lien. There was no covenant to erect any new buildings, nor was there authority given, express or implied, to purchase a steam engine and fixtures. There was no such change made in the furnace and casting-house by the repairs put upon them, as to make them new buildings, so as to confer the right to a lien upon them under the Act of 1836 ; nor could the erection of

[Long *v.* McLanahan.]

frame engine and boiler-houses so situated as to be connected, by machinery, with the furnace and casting-house, render the latter new erections, liable to a mechanics' lien, either under the Act of 1836 or of April 21st 1856.

*H. T. Harvey,* for defendants in error.—If a building is erected by a tenant with the assent of his landlord and at his ultimate expense, being paid for out of rent or from the use and profit of the premises, the building and ground on which it is erected is subject to the mechanics' lien: Anshutz *v.* McClelland, 5 Watts 487; Holdship *v.* Abercrombie, 9 Watts 52; Rush *v.* Fisher, 8 Phila. R. 44; Barclay *v.* Wainwright, 5 Norris 191; Fox *v.* Ketterlinus, 10 W. N. C. 506; Amos *v.* Clare, 9 Phila. R. 35; Hall *v.* Parker, 13 Norris 109. The distinction between improvement leases and agreements held to be building contracts is clearly drawn in the following cases: Woodward *v.* Leiby, 12 Casey 437; Leiby *v.* Wilson, 4 Wright 63; Reid *v.* Kenney, 4 W. N. C. 450; Barclay *v.* Wainright, supra; Hopper *v.* Childs, 7 Wright 310; Fisher *v.* Rush, 71 Pa. St. 40. When the structure of a building is so completely changed, that in common parlance, it may be properly called a new building or a re-building, it comes within the mechanics' lien law: Armstrong *v.* Ware, 20 Pa. St. 519; Parrish & Hazard's Appeal, 83 Pa. St. 111; Driesbach *v.* Keller, 2 Pa. St. 79; Hershey *v.* Shenk, 58 Pa. St. 382; Miller *v.* Hershey, 59 Pa. St. 64. The lien was properly filed against the entire furnace property, instead of against the separate buildings: Burt *v.* Kurtz, 5 Rawle 246; Hoatz *v.* Patterson, 5 W. & S. 537; Lauman's Appeal, 8 Barr 473.

Mr. Justice TRUNKEY delivered the opinion of the court October 1st 1883.

Long and Furst leased to Curtin nine acres of land on which stood a furnace building, with a water-power or right, for the term of ten years, Curtin to pay an annual rent of $1 and all taxes assessed on the property during the term. Curtin also agreed " to repair, improve and rebuild said furnace building, and put the same in proper condition for manufacturing iron, and to operate the same in the manufacture of iron." He undertook to complete the repairs and have the furnace in operation within three months and seven days from the date of the lease, and that all the improvements should belong to Long and Furst at the expiration of the term; provided that if he should surrender the premises at the end of three years he should own one-half interest in said improvements. He also had the privilege of buying part of the land and the water-

right, at a stipulated price, within one year from date of the lease.

The furnace had not been in operation for more than twenty years; originally it was a charcoal furnace, had been changed to an anthracite furnace, and had always been run by water-power. The forebay had rotted, and the water-wheel, shafting and machinery had decayed, or had been removed. The buildings consisted of the furnace, a stone structure called the "stack," about thirty-eight feet square, and a casting-house, built of stone, fifty-nine feet long and forty-three feet wide, and one story high. These were in a somewhat dilapidated condition, especially the casting-house, a portion of its walls having fallen and its roof become worthless. There had been a bridge, or bridge-house, from the bank to the stack for the purpose of wheeling stock into the furnace, but the wood-work had so rotted that it needed rebuilding.

Curtin immediately took possession and began the improvements. The outer walls of the stack required little repair, and its general appearance remained the same as before. Its north side was the south wall of the casting-house, and needed no repair. He tore down the gable of the north wall, a small portion of the east wall, and the greater part of the west wall to within about four feet of the ground, of the casting-house, the parts taken down being unsafe. These parts were not rebuilt with stone, the openings were encased with boards, and a new roof was put on the entire building, with a new ventilator at the top. He erected an engine-house, forty-three feet by twenty feet, and placed in it the engine with attachments and necessary machinery for running; also a boiler-house, thirty-five feet by fifteen feet, and placed therein the boilers. He tore down an old stable that stood on the premises, using it as the principal part of the material for the engine and boiler-houses. The bridge, or bridge-house, was also rebuilt.

There is no material conflict in the testimony respecting the condition of the property at the date of the lease, and of the improvements made by Curtin. It is manifest that extensive and costly improvements were necessary before iron could be manufactured. These the tenant was bound to make—they constituted the rent, except taxes, for the whole term, or the half interest in them was to be the rent if he elected to terminate the lease at the end of three years. In no event had he the right to remove the improvements. Whatever was necessary to put the furnace in proper condition for manufacturing iron, he covenanted to do, whether it was repairing or rebuilding. He was as much bound to rebuild the forebay and water-wheel, and replace all proper machinery for running the furnace by water, as he was to repair the stack, unless the agreement

[Long v. McLanahan.]

authorized the substitution of steam. It is true that the improvements to be made were not specified in detail, and that no value was named, and that the stipulated rent was $1 per annum. But for the whole term the landlords were to have all the improvements; these had real value, and were actual compensation for use of the land, though the parties did not choose to express the fact in very words. The learned judge of the common pleas was right in construing the lease to involve a building contract, and that the property was bound for improvements made under the terms of that contract, if the improvements came within the mechanics' lien laws. Where the tenant contracts with the landlord to build, or to add to or repair buildings, to be paid for by the landlord, either in money or the use of the premises, he is the landlord's agent, and the building is liable to a mechanics' lien as in all other cases of contract: Hall v. Parker, 94 Pa. St. 109.

Did the lessors authorize the substitution of steam-power? This is not determined by their right to hold all the improvements which the lessee might choose to make, but by the contract, which is to be interpreted in the light of the circumstances. The subject of the lease was an old furnace property, with water-power or right, and the only power that ever had been used in operating the furnace was water. There is not a word in the contract indicative of a purpose that new buildings should be erected other than rebuilding the old, or that other power should be used than that mentioned in the lease. All that the landlords could demand was, that the furnace be operated by water, in the same manner as it formerly had been; all that the tenant was authorized to do was to bring that power into operation; and persons dealing with tenant or agent for the making of improvements, were bound to take notice of the extent of his authority, for aside from the contract there is no evidence to bind the landlords for anything. Nothing in the relation of landlord and tenant implies authority in the tenant to make improvements subject to a lien on the landlord's property. The covenant to repair, improve and rebuild said furnace building includes erection of no building of a character differing from the old. An agreement for repairs and making repairs accordingly would not subject the property to a lien—the property would not have been liable to lien for such repairs as were necessary to run the furnace by water. The danger to the landlords would be far greater upon a contract for the introduction of steam-power, for in such case the property would be subject to a lien for the new buildings and machinery. It cannot be presumed that the parties contemplated abandonment of the water-power in absence of expression to that effect. As well might it be contended that the landlords authorized the

erection of a rolling-mill, as that of engine-houses and boiler-houses, and placing engines and boilers therein. A rolling-mill, though for manufacturing iron, was not intended; nor was steam-power for the furnace. Therefore, as against the landlords' property, the engine-house and boiler-house and the fixtures therein, are not the subjects of mechanics' lien.

The plaintiffs claim, also, for work and material furnished for the repair of the stack, on the ground that the furnace is a new building; they are not entitled to a lien for alterations or repairs, even if made by express order of the landlord, the Act of May 1st 1861, P. L. 550, not being in force in Clinton county. With respect to the merging of old buildings in new, it was said in Miller *v.* Hershey, 59 Pa. St. 64, "The idea which runs throughout all the cases is newness of structure in the main mass of the building, that entire change of external appearance, which denotes a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered. This newness of construction must be in the exterior, the main plan of the building, and not its interior arrangements. . . There may be a lien for a new structure added to an old one, such as a kitchen or side building; as seen in Nelson *v.* Campbell, 4 Cas. 156; Lightfoot *v.* Krug, and Pretz's Appeal, 11 Cas. 348 and 349, and Harman *v.* Cummings and wife, 7 Wr. 322. But the lien there, is for the new structure." In Parrish & Hazard's Appeal, 83 Pa. St. 111, upon elaborate review of a number of prior decisions, it was decided that substantial buildings made near an old building, for permanent purposes, and so connected with the original structure as to make their connection as available and essential as if built beside its walls, are additions of material parts to the original structure, and when they serve all the purposes that actual additions would serve, and their extent and value are significant enough to give notice to purchasers and creditors of the change in the character of the property, the work and the material therefor, and the machinery placed therein are subjects of mechanics' liens under the Act of June 16th 1836. There the additions were made by the owners of the iron works and consisted of a new engine-house and boiler-house, in which were placed an engine and six boilers, all upon the furnace property, and they served all the purposes of the furnace that actual additions would have served. The claims were filed for the machinery against the new houses and machinery therein, together with the ground necessary for their enjoyment, and were sustained on the authority of Nelson *v.* Campbell, 28 Pa. St. 156; Lightfoot *v.* Krug, 35 Id. 348; Pretz's Appeal, Id. 349, and Harman *v.* Cummings, 43 Id. 322, which rule that an

[Long *v.* McLanahan.]

addition to an old building is a new structure, within the intendment of the Act of 1836. It was also remarked that if the buildings be regarded as ordinary out-houses, the same process of reasoning that supported the liens against additions in those cases, requires that the liens against the engine and boiler-houses and machinery therein, should be supported under the Act of April 21st 1856.

There is a marked difference between the case of an addition to a building, and the merging of an old building into a new one. A kitchen or wing added to a dwelling, does not transform the dwelling into a new erection; nor will an old furnace building become new by the addition of an engine-house and boiler-house. A lien may attach for the additions, but not for alterations or repairs of the old building. Where, for the purpose of enlarging a building, an addition was put up, seventeen feet in front, and running back to the rear of the building, and many changes were simultaneously made in the old portion, it was held that for the erection of the addition a lien arose binding the entire structure, but not for the alterations in the old part: Harman *v.* Cummings, supra.

That the stack and casting-house constitute the furnace building named in the lease, and that they externally appear to be the same structures used more than twenty years ago, seems too plain for doubt. It is scarcely pretended that the outer walls of the stack have been materially changed. Patching the broken stone walls of the casting-house with boards and putting on a new roof evidence repairs, not newness of structure of the mass of the building. The new bridge did not merge the old furnace building. Had the proper work been done for utilizing the water-power it would have been a repair. It may be conceded, perhaps not doubted, that for the additions of the engine-house and boiler-house and machinery therein, under the Acts of 1836 and 1856, the property of the landlords would have been bound by the mechanics' lien, had the contract authorized their construction; but for repairs and alterations of the furnace building, though expressly authorized, there was no lien.

This claim is filed against the entire premises for work done and materials furnished for the erection and construction of a casting-house and furnace, bridge-house, engine-house and boiler-house, known as the Mill Hall Furnace, and would be good if the main building were a new erection; but the facts bring it within the ruling in Wharton, Bros. & Co. *v.* Douglas, 92 Pa. St. 66. That case arose prior to the Act of June 11th 1879, P. L. 123, which requires the court, "in any stage of the proceedings to permit amendments conducive to justice and a fair

[Balliet *v.* Brown.]

trial upon the merits." If the plaintiffs were entitled to a lien it would be important to consider whether they had right to amend their claim.

Judgment reversed.